## C. H. Young v. C. W. Fry.

### No. 359.* (58 Pac. 497.)

Compromise Verdict—*New Trial.* Courts of review ought to exercise with caution the power of setting aside verdicts and directing new trials, and where a reversal is sought solely on the ground of error in rendering judgment on a compromise verdict it must be clearly apparent from the evidence that the jury had no right to assess damages at the amount returned.

Error from Atchison district court; W. D. Webb, judge. Opinion filed October 6, 1899. Rehearing. Affirmed.

*W. F. Guthrie,* for plaintiff in error.

*W. D. Gilbert,* for defendant in error.

The opinion of the court was delivered by

Mahan, P. J. : It is contended that under the evidence in the case, as disclosed by the record, the court should have granted a new trial because "the verdict is contrary to all of the evidence and is not sustained by any view thereof and is inconsistent therewith." This ground assigned for a new trial is doubtless intended to be under the sixth statutory ground, which is as follows : "That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law." We take it that the real contention is that the verdict is contrary to law because it is a compromise verdict ; that there were but two verdicts which the jury could possibly render under the evidence, one for the plaintiff for the full amount of his claim, or a verdict for the defendant. If the record disclosed such a condition, we would be obliged

* On the first hearing only an opinion *per curiam* was delivered. (7 Kan. App. 812, 53 Pac. 1133.) — Rep.

to sustain the contention and direct a new trial.   We
said in our opinion at the original hearing of this case ·
that this contention was not available to the plaintiff
in error because the record did not contain, or purport
to contain, all of the evidence.   It is contended, and it
is quite true, that the record purports to set out the sub-
stance of all the evidence but not its detail.   On the part
of the plaintiff, the record recites that he was sworn,
and testified that on the 24th day of October, 1893, he
entered into a contract with the defendant to work for
him in selling organs and collecting the proceeds of sales
made by him and made by others ; that the plaintiff
was to furnish a horse and harness in said work ; that
he should work with his horse and harness in the ter-
ritory around Atchison, Kan., and that the defendant
should pay him therefor what such services were rea-
sonably worth ; that he served the defendant under
the contract from October 1, 1893, to July 1, 1894,
continuously, except two weeks, and was not engaged
in any other business during that time ; that his travel-
ing expenses were $50.80 ; that he had been paid
$210.63 ; and that he had done work for the plaintiff,
the record says, but it doubtless means the defendant,
under the contract in Missouri in gathering up and
bringing in organs which had not been paid for.   The
record shows also that he called other witnesses, who
testified that such services were worth from twelve
dollars to fifteen dollars a week and expenses, and
rested ; that the defendant Young testified that he had
never made any contract with the plaintiff to work for
him with horse and harness at all ; that he had made
a contract with the plaintiff without horse and har-
ness, and that he, the defendant, furnished a team of
horses and harness ; that if the plaintiff had used his
own horse and harness at any time he had done so

voluntarily; that he never made any contract with the plaintiff to pay what his services were reasonably worth, but that he had made a contract with him to sell organs for him in the territory surrounding Atchison, using his (defendant's) wagon, horses, and harness, he to furnish the organs at a list price, plaintiff to sell them, and to have for his services one-half the difference between the list price and the amounts the plaintiff might be able to realize from the sales thereof, the plaintiff to pay his own expenses and the expense of the team while traveling with it; that at or about the same time the plaintiff agreed that he would make collections for the defendant on sales made by other agents at a compensation of ten per cent. on the amount collected, the defendant to pay the expenses of the plaintiff while making such collections, and that the defendant paid such expenses, amounting to $50.80; that he furnished to plaintiff wagon, horses and harness, and organs to be sold, from October 1, 1893, to July 1, 1894, and that the plaintiff had made sales for him on which the difference between the list price and the amount realized from the sales was the sum of $268.50; that the plaintiff had made collections under the contract to the amount of $132; that he had paid the plaintiff $210.63; that the plaintiff was entitled to one-half of the net proceeds, to wit, $268.50, the one-half being $134.25, and the sum of $13.20, being ten per cent. on the collections, and $50.80 expenses, making a total credit of $198.25; that the defendant produced witnesses (naming them) who testified that they were blacksmiths, and that during the period in controversy the plaintiff had brought to their shops to be shod the defendant's teams; also, a witness (naming him) who testified that he had been employed by the defendant to take charge of his horses, and that at all

times he, the defendant, had plenty of horses for the plaintiff to use, and that the defendant always furnished the plaintiff with horses whenever requested to, and that at no time was it necessary for the plaintiff to use his own horse ; and also a witness, Noll, who testified that he was a sewing-machine agent, and that during the period covered by the plaintiff's claim the plaintiff had sold two sewing-machines for him and hauled them out in the defendant's wagon, and that the plaintiff had divided the profits on the sales with him. The defendant produced another witness who testified that, during the period covered by the plaintiff's claim he had helped another sewing-machine agent to sell her a sewing-machine ; and another witness who testified that during that time the plaintiff had sold him an organ and delivered it in the defendant's wagon and claimed that the organ was the property of the defendant ; and another witness, who testified that the plaintiff tried to induce him to cooperate with him in the sale of an organ for a St. Joseph house in June, 1894 ; that he informed the plaintiff at the time that he had already contracted the sale of an organ to be delivered from the defendant; that the plaintiff told the witness that if he would make the sale from the St. Joseph house that he (the plaintiff) could get an organ from him at such a figure that they could make more money after dividing the commission with the plaintiff than they could by selling an organ for the defendant ; and then follows this statement : "The evidence tended to show that the plaintiff had devoted some time to other business besides the business of the defendant and had lost some time, but how much time he had so lost, or devoted to other business, did not appear." The record then says the defendant rested his case ; that he introduced no evidence contradicting

the evidence on the part of the plaintiff concerning the reasonable value of the services performed; and that the plaintiff then testified in rebuttal concerning the matters offered in evidence by the defendant.

Courts of review ought to exercise with caution the power of setting aside verdicts and directing new trials, and with a certainty that the jury has acted with prejudice, passion, or some motive other than that of awarding substantial justice to the parties. Whether, in the evidence of the witness in behalf of the plaintiff respecting the value of his services, the value of his services personally was disconnected from the value of the use of the team and harness, the record does not purport to show. The details of the witness's evidence are not given. It is, however, apparent that the jury had a right to find upon the evidence that, although the plaintiff's theory that the contract was for a reasonable compensation for his services, as he claimed, yet that it did not include his horse and harness. They had the further right to find from the evidence that he had not devoted all of the time to the service of the defendant which he claimed he had; that he was in error as to this. The case was tried upon the plaintiff's bill of particulars filed before a justice of the peace, without any pleadings filed on the part of the defendant, so that any defense was available to him that was lawful for him to make. That the jury did not award the amount they might have awarded under the plaintiff's evidence is no ground for a complaint on the part of the defendant. The state of the evidence on behalf of the defendant was of such character that it necessarily left the jury in a position in which they were obliged to do the defendant an injustice if they allowed the plaintiff the full amount of his claim, and

at the same time believed that he used the defendant's horses, not his own, and that he had lost time covered by the period for which he made the claim.

In conclusion, it is not a case in which they were obliged under the evidence to return either a verdict for the entire claim of the plaintiff or a verdict for the defendant. It does not appear to have been a compromise verdict in the sense in which that term is used in the books. It does not appear that impartial justice has not been done between the parties, and in all such cases it is the duty of the reviewing court, in the interest of peace, not to disturb the verdict of the jury where it has been approved by the trial court, who heard all the evidence in detail and is presumed to have acted thereon, and who was necessarily in a better position to determine whether the verdict of the jury was sustained by the evidence in its detail than we are with the record before us, giving but a *resume* of the substance thereof. We adhere to our former opinion.

The judgment is affirmed.